

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

LISA M. and KENNETH M., as
Parents/Guardians/Next Friends of J.M., a
Minor Individual with a Disability,
    Plaintiffs/Counter-Defendants,
-vs-

LEANDER INDEPENDENT SCHOOL
DISTRICT,
    Defendant/Counter-Plaintiff.

CAUSE NO.:
AU-16-CA-01085-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically, Defendant Leander Independent School District (the District)'s Motion for Judgment on the Administrative Record [#21], Plaintiffs' Response [#28] in opposition, and LISD's Reply [#32] in support; and Plaintiffs' Motion for Judgment on the Administrative Record [#22], LISD's Response [#27] in opposition, and Plaintiffs' Reply [#31] in support. Having reviewed the documents, the relevant law, and the case file as a whole, the Court now enters the following opinion and orders.

### Background

This is a special education case brought under the Individuals with Disabilities Education Act (IDEA). J.M. has mild Attention Deficit Hyperactivity Disorder (ADHD) and Developmental Coordination Disorder (DCD) as well as Dysgraphia.[1] Compl. [#1-1] Ex. 1

---

[1] Plaintiffs and the SEHO alternately refer to J.M.'s dysgraphia as a "Specific Learning Disability in Written Expression."

1

(SEHO Decision) at 11.[2] The parties do not dispute these conditions qualify as disabilities under the IDEA. Def.'s Mot. J. Admin. R. [#21] at 12. Since the third grade, J.M. has been granted accommodations under a Section 504 Plan. Administrative Record (AR) at 1302; *see generally* 29 U.S.C. § 794; *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983) (explaining Section 504 requires school district to provide "reasonable accommodations" allowing student "to receive the full benefits of the school program").

In late summer 2015, as J.M. began fourth grade, J.M.'s parents requested the District conduct a full and individual evaluation (FIE) of J.M. in order to determine (1) whether J.M. qualifies as a child with a disability under the IDEA, and (2) J.M.'s educational needs. Def.'s Mot. J. Admin. R. [#21] at 8; *see generally* 34 C.F.R. § 300.301 (requiring school to conduct FIE upon parental request). Thereafter, on January 4, 2016, the District completed an FIE with respect to J.M. AR at 886–933.

The FIE determined J.M. qualified as a student with a Specific Learning Disability (SLD) in the area of Written Expression and an Other Health Impairment (OHI) in the form of ADHD. *Id.* at 619. Specifically, the FIE noted J.M. demonstrated below average processing speed, affecting his performance in reading, writing, and math. *Id.* at 619. After taking into account the effect of the identified disabilities on J.M.'s performance and processing speed, the FIE determined J.M. needed special education services. *Id.*; *see generally* 34 C.F.R. § 300.8 (defining "child with a disability" as a child with a qualifying disability under the IDEA who, "by reason [of the disability], needs special education and related services).

---

[2] For the sake of consistency, all docket citations reference CM/ECF page numbering. The Administrative Record is cited according to its own pagination.

2

On January 25, 2016, an Admission, Review, and Dismissal Committee (ARDC) meeting was held.[3] AR at 630–55 (Jan. 25 IEP). The ARDC is responsible for developing, reviewing, and revising the Individual Education Plan (IEP) outlining the services to be provided to qualifying students under the IDEA. 24 C.F.R. § 300.320. State and federal law mandate the ARDC include the parents of the child, the child's teachers, and a representative of the school district, as well as various other participants. 34 C.F.R. § 300.320; 19 TEX. ADMIN. CODE § 89.1050; *see also* AR at 651 (listing attendees of the January 25, 2016 meeting).

At the ARDC meeting, J.M.'s academic performance was assessed by J.M.'s teachers and by several District specialists. In December 2015, while the District was in the process of producing J.M.'s FIE, J.M. had failed all of his benchmark tests, scoring 30% in written expression, 45% in reading, and 57% in math. AR at 773, 812, 817–22. His teachers characterized these scores as "shockingly low." *Id.*; SEHO Decision at 11; Resp. Pls.' Mot. J. Admin. R. [#27] at 7. Overall, the testimony of J.M.'s teachers at the ARDC meeting indicated J.M.'s disabilities were affecting his performance in the classroom such that he might benefit from special education and related services. *See, e.g.*, Pls.' Mot. J. Admin. R. [#22] at 20 ("Math is a struggle any time the writing gets lengthy. I didn't realize what it could look like." (citing AR at 763–66, Jan. 25 Tape at 02:52:00)); SEHO Decision at 17–18 (cataloguing observations made by J.M.'s teachers at January 25 ARDC meeting).

The District specialists also offered assessments of J.M.'s performance, generally concluding J.M. demonstrated several areas of weakness on account of his disabilities which likely qualified him for IDEA special education and services. LISD Licensed Specialist in

---

[3] Federal law requires school districts convene Individual Education Program (IEP) Teams to develop, review and revise IEPs outlining the services to be provided to students who qualify under the IDEA. 34 C.F.R. § 300.320–300.321. Texas regulations refer to the IEP team as the Admission, Review, and Dismissal Committee (ARDC). 19 TEX. ADMIN. CODE § 89.1050.

3

School Psychology (LSSP) Charleen Adair noted J.M. demonstrated a significant weakness in Processing Rate and corresponding weaknesses in Reading, Math, and Written Expression as well as Math Fluency, Word Fluency, and Reading Rate. Pls.' Mot. J. Admin. R. [#22] at 19 (citing AR 763–66, January 25 Tape at 01:24:40–01:26:00, 01:32:00, 01:50:29). LISD Coordinator Sharon Holmes stated J.M. does qualify for [services based on the effect of his disabilities on] written expression. *Id.* (citing AR 763–66, January 25 Tape at 01:35:00–01:37:36). Kim Houser, a Dyslexia Specialist, noted J.M. demonstrated a Developmental Reading Assessment (DRA) Rate of 93 words per minute, significantly below the expected fourth grade rate of 120–160 words per minute. *Id.* (citing AR 763–66, January 25 Tape at 01:51:10, 02:17:40). Both parties agreed that J.M. was achieving acceptable grades in his fourth grade classes largely due to formal and informal accommodations afforded by the District. *See* Def.'s Mot. J. Admin. R. [#21] at 17–18 (emphasizing efficacy of Section 504 accommodations); Pls.' Mot. J. Admin. R. [#22] at 20 (explaining J.M.'s grades do not necessarily reflect his performance because when writing is illegible or shown work is incomprehensible, J.M.'s teacher just asks him, "what is this supposed to say?" (citing AR at 763–66, Jan. 25 Tape at 00:49:05)).

Based on the evidence and assessments presented during the January 25 meeting, the ARDC concluded J.M. was eligible for services under the IDEA. Jan. 25 IEP. LISD Lead LSSP Charleen Adair explicitly asked J.M.'s mother, Lisa M., if she agreed with the evaluation of J.M. and with J.M.'s eligibility for special education services. AR at 765. Lisa M. replied in the affirmative. *Id.* Accordingly, the ARDC drafted an IEP proposal setting forth two goals. Jan. 25 IEP. The first goal was for J.M. to be able to score at least a 3 on the LISD writing rubric. *Id.* The second goal was for J.M. to achieve a reading rate of 130 words per minute, representing a

40 percent increase over his current reading rate. *Id.* If accepted, the IEP was to go into immediate effect. AR at 644 (indicating services were to begin on January 26, 2016).

The IEP produced at the meeting states "Assurances given. Parents/district agree with IEP." AR at 650. However, at the end of the ARDC meeting, Lisa M. declined to sign ARDC paperwork indicating she agreed with the conclusions reached at the meeting, instead explaining she wished to speak with her husband, who had been unable to attend. *Id.* At the conclusion of the meeting, the ARDC scheduled a contingent follow-up meeting for February 5, 2016 to address any disagreements J.M.'s parents might have regarding the IEP. *Id.*

Subsequently, on February 3, 2016, Lisa M. informed the District by email that after having reviewed the FIE and the IEP, Lisa M. and her husband had decided to disagree with both. AR at 656. Lisa M. explained that while they agreed to the initiation of services for J.M., they disagreed with "the quality/quantity of all of the individual evaluations." *Id.*

In response, the District cancelled the ARDC meeting scheduled for February 5. AR at 1273; Def.'s Mot. J. Admin. R. [#21] at 5–6. On February 11, the District created an FIE addendum confirming J.M. was eligible for special education services under the IDEA. AR at 657–90, 1285. Then, sometime between February 11 and February 22, the District held a private staff meeting with J.M's teachers and the District's Lead LSSP, Ulli Crane. AR at 2091–94. The District's attorney, Denise Hays, was also in attendance. *Id.* District LSSP Charleen Adair later explained the meeting was held so the ARDC "team" could "systemically address or review the process" by which the ARDC had determined J.M. was eligible for IDEA services. AR at 1288–90. J.M.'s parents were not invited to this meeting, nor were they told it had occurred. *Id.* LSSP Adair explained that J.M.'s parents were not invited because, while J.M.'s parents were members

of the ARDC team, their presence was not required at meetings held to discuss and review the process by which the District determined J.M. was eligible for IDEA services. *Id.*

Finally, a second ARDC meeting was held on February 23, 2016. AR at 692. Unaware the District had already met and decided to deny J.M.'s eligibility, J.M.'s parents believed the meeting was for the purpose of addressing their concerns about the FIE. AR at 1528. They were incorrect. At the end of the meeting, the District informed Plaintiffs the District no longer considered J.M. eligible for special education. Pls.' Mot. J. Admin. R. [#22] at 19 (citing AR 763–66, February 23 Tape, 00:33:40–00:36:10). When asked about the prior IEP formulated by the District, LISD attorney Denise Hays indicated the previous IEP was irrelevant because the District intended to deem J.M. ineligible for special education services. *Id.*

On May 20, 2016, Plaintiffs requested a special education due process hearing with the Texas Education Agency (TEA). Compl. [#1] at 3; *see also* 20 U.S.C. § 1415. Plaintiffs argued the District erred in determining J.M. was not eligible for services under the IDEA. Compl. [#1] at 3–4. Plaintiffs also alleged the District violated procedural provisions of the IDEA by convening an ARDC meeting without J.M.'s parents and by failing to give prior written notice of the District's reconsideration of J.M.'s eligibility. *Id.* On July 18–19, 2016, the Special Education Hearing Officer (SEHO) conducted a full two-day hearing, wherein sixteen witnesses testified. *Id.*

The SEHO determined that J.M. was eligible for special education services and that the District improperly, incorrectly, and unilaterally rescinded J.M.'s eligibility without giving prior notice to J.M.'s parents. SEHO Decision at 4–5. Specifically, the SEHO found (1) the District had an obligation to begin providing services following the January 26 meeting; (2) the District did not begin providing the services; (3) the District unilaterally rescinded J.M.'s eligibility for

services without giving prior written notice to J.M.'s parents; and (4) the District wrongly concluded J.M. was not eligible for services. *Id.*

In reaching his determination the District erred in determining J.M. was ineligible for services, the SEHO observed a "shocking difference" in the opinions and statements made by teachers and staff at the January ARDC meeting versus those made at the February ARDC meeting and the due process hearing. SEHO Decision at 36–37. The SEHO determined these discrepancies did not result from a reexamination of J.M.'s performance, but rather from "education" provided to the teachers and staff by District personnel regarding the role of special education in public schools. *Id.* at 20–21; *see also* AR at 1394–96. The SEHO concluded the statements and testimony of the District staff at the February ARDC meeting and later due process hearing were not credible and therefore discounted them accordingly. SEHO Decision at 37.

Having determined J.M. was entitled to services under the IDEA, the SEHO concluded the FIE proposed by the District prior to its about-face had fully identified and sufficiently addressed all of J.M.'s suspected disabilities. *Id.* at 4–5. The SEHO therefore ordered the District to begin executing its previous IEP proposal and to reconvene the ARDC to address the Plaintiffs' concerns. *Id.* The SEHO also awarded compensatory education in an amount equal to the deprivation of education resulting from the District's delay in providing services and improper recension of eligibility. *Id.*

On September 21, 2016, Plaintiffs filed a complaint in federal court requesting attorney's fees in connection with the due process hearing. Compl. [#1]. The District responded by asking this Court to overturn the decision of the SEHO. Answer & Countercl. [#3].[4] Both parties now

---

[4] To the extent the District continues to maintain it has sovereign immunity with respect to IDEA claims, *see* Answer & Countercl. [#3] at 10–11; Pls.' Mot. J. Admin. R. [#22] at 35–36, Resp. Pls.' Mot. J. Admin. R. [#27]

file motions for judgment on the administrative record.[5] Def.'s Motion J. Admin. R. [#21]; Pls.' Mot. J. Admin. R. [#22]. These pending motions are ripe for review.

## Analysis

### I. Legal Standard

Under the IDEA, any party aggrieved by the SEHO's findings and decision may bring suit in federal district court. 20 U.S.C. § 1415(i)(2)(A). Neither party has asked the Court to review evidence in addition to the administrative record. When no new evidence is presented to the district court in an IDEA suit, "the motion for summary judgment is simply the procedural vehicle for asking the Court to decide the case on the basis of the administrative record." *Austin Indep. Sch. Dist. v. Robert M.*, 168 F. Supp. 2d 635, 638 (W.D. Tex. 2001); *see Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995) ("Though the parties [in an IDEA action] may call the procedure 'a motion for summary judgment' . . . the procedure is in substance an appeal from an administrative determination, not a summary judgment.").

"Under the IDEA, a federal district court's review of a state hearing officer's decision is virtually de novo. . . . The hearing officer's findings should be accorded due weight, but the district court must arrive at an independent conclusion based on a preponderance of the evidence." *Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir. 2003). Thus, even though it is termed summary judgment, the existence of a disputed material fact will not defeat a summary judgment motion. *See* 20 U.S.C. § 1415(i)(2)(C)(iii). In an appeal

---

at 5 n.2, the District is wrong. *See generally Pace v. Pogalusa City Sch. Bd.*, 403 F.3d 272, 280–90 (5th Cir. 2005) (holding state may knowingly and voluntarily waive sovereign immunity as a condition to receipt of federal special education funds).

[5] The parties have agreed to postpone consideration of the motion for attorney's fees until the Court has disposed of the parties' motions for judgment on the administrative record.

from the decision of an IDEA hearing officer, the appellant bears the burden of persuasion. *Seth B. ex rel. Donald B. v. Orleans Parish Sch. Bd.*, 810 F.3d 961, 972 (5th Cir. 2016).

## II. Application

A district court's review of an SEHO decision is twofold: the district court must (1) determine whether the school district complied with the IDEA's procedural requirements, and then (2) determine if the student's IEP is reasonably calculated to provide meaningful educational benefits. *Rowley*, 458 U.S. at 206–07.

### A. Procedural Violation—Prior Written Notice

Under 34 C.F.R. § 300.503(a), the parents of a child with a disability must be given prior written notice of any proposal or refusal to initiate or change "the identification, evaluation, or educational placement of the child or the provision of FAPE to the child."

Plaintiffs argue the District violated § 300.503 by approving J.M.'s eligibility for services and then rescinding that eligibility without prior written notice. Pls.' Mot. J. Admin. R. [#22] at 29, 31–34. The District concedes it did not issue any prior written notice to J.M.'s parents before the February 23 meeting but contends § 300.503 does not apply in these circumstances. Resp. Pls.' Mot. J. Admin. R. [#27] at 17–19.

As a factual matter, Plaintiffs are correct the District concluded J.M. was eligible for special education and related services. The District concluded on three separate occasions—in three different written documents—that J.M. was eligible for such services. *See* Jan. 4 FIE; Jan. 25 IEP; Feb. 11 FIE Addendum. After considering the proposed FIE and IEP, Plaintiffs consented to the initial provision of special education services by email on February 3, stating they agreed to the initiation of services but disagreed with portions of both the FIE and IEP

9

prepared by the District.[6] AR at 656. At this point—prior to the February 23 meeting—both parties agreed J.M. was eligible for special education and related services under the IDEA.

However, notwithstanding the factual accuracy of Plaintiffs' account,[7] the Court finds the District was not required to provide written notice in advance of the meeting. As interpreted by the Department of Education, § 300.503 does not require prior written notice be provided prior to an ARDC meeting. 71 Fed. Reg. 46691. Subsequent to the February 23 meeting, the District provided written notice of the District's intent to deny J.M.'s eligibility for special education services. AR at 700–01. This was all that was required of the District under § 300.503. The Court therefore finds the District did not commit a procedural violation in failing to issue prior written notice before the February 23 ARDC meeting.

Plaintiffs also argue the District was required to provide prior written notice before it postponed the initiation of services under the disputed IEP. Reply Pls.' Mot. J. Admin. R. [#31] at 13. According to Plaintiffs, the District was required to begin providing services under the disputed IEP upon receiving the February 3 email consenting to the initiation of special education services. *Id.* In the due process hearing below, the SEHO agreed and found § 300.300(b)(1) "establishes that once a parent has agreed to the provision of Special Education services, the IEP as proposed (even if not yet agreed to) must be implemented."

The text of § 300.300(b)(1) does not support this conclusion. Section 300.300(b)(1) does not address the timing of implementing services after a school district obtains parental consent.

---

[6] As interpreted by the Department of Education, § 300.300(b)(1) only requires parents to consent "to the initial provision of special education and related services generally, and not to the particular special education and related services to be included in the child's initial IEP." Dep't of Educ., Questions and Answers on Individualized Education Programs (IEPs), Evaluations, and Reevaluations, at 22–23 (revised June 2010) [hereinafter, Dep't of Educ. Guidance], http://www2.ed.gov/policy/speced/guid/idea/iep-qa-2010.pdf.

[7] The District, for its part, contends "no decision had been made regarding J.M.'s eligibility." Resp. Pls.' Mot. J. Admin. R. [#27] at 19. As a factual matter, this statement is incorrect, notwithstanding the fact the IEP had not yet been finalized.

10

*See* 34 C.F.R. § 300.300(b)(1) ("A public agency . . . must obtain informed consent . . . before the initial provision of special education and related services to the child."). In reaching his conclusion the District should have immediately implemented the proposed IEP, the SEHO appears to have relied on guidance from the Department of Education indicating that when a parent agrees with the majority of services to be provided under the IEP but voices disagreements regarding particular services, "the public agency should work with the parent informally to achieve agreement . . . and provide the service or services that are not in dispute." Dep't of Educ. Guidance at 23. While this guidance offers sound pragmatic advice, it does not appear to have any basis in law, and the guidance itself cites no statute or rule in support of its position. The Court therefore finds the District was not required to provide prior written notice simply because it declined to initiate services under a contested IEP.

In sum, the Court finds the District did not commit a procedural violation of the IDEA by failing to provide written notice.

**B.     Substantive Violation**

Because Texas receives federal education funding, all school districts within the state must comply with the IDEA. *See Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 (5th Cir. 1997). The IDEA requires states receiving federal education funding to provide a free appropriate public education (FAPE) to all eligible children. 20 U.S.C. § 1412(a)(1). A FAPE may include both "special education" and "related services" if a child qualifies as a "child with a disability" under the IDEA.[8] A child qualifies as a "child with a disability" if the child has an intellectual disability, specific learning disability, or other health

---

[8] Special education is "specifically designed instruction . . . to meet the unique needs of a child with a disability." 20 U.S.C. § 1401(9). Related services are the support services "required to assist a child . . . to benefit from [special education]." *Id.* § 1401(26), (29); *see also* 34 C.F.R. § 300.34 (defining related services); *id.* § 300.39 (defining special education).

11

impairment and, "by reason thereof, needs special education and related services." 34 C.F.R. § 300.8(a)(1).

Once it has been determined a child possesses a qualifying disability, the need for "special education" is the fulcrum upon which eligibility turns—if a child needs "related services" such as physical therapy but does not need "special education," the child does not qualify as a "child with a disability" under § 300.8(a)(1). *See Marshall Joint Sch. Dist. No. 2 v. C.D. ex rel. Brian D.*, 616 F.3d 632, 641 (7th Cir. 2010). "Special education" is defined as "specifically designed instruction . . . to meet the unique needs of a child with a disability." 20 U.S.C. § 1401(29). "Related services" are defined as support services "required to assist a child . . . to benefit from [special education]." *Id.* §§ 1401(26); 34 C.F.R. § 300.34 (defining related services); *id.* § 300.39 (defining special education).

When a child qualifies as "a child with a disability under the IDEA," the school district is required to convene a committee—composed of a school district representative, a teacher, the child's parents or guardians, and, when appropriate, the child himself—to develop an individualized education plan (IEP) for the child. *El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d 918, 925 (W.D. Tex. 2008) (citing 20 U.S.C. § 1414(d)(1)(B)); *see generally* 20 U.S.C. 1414 (explaining role of IEP committee). The IEP is a written statement setting out the special education and related services to be provided to the child as part of the child's FAPE. *See Endrew F. v. Douglas Cty. Sch. Dist. RE–1*, 137 S. Ct. 988, 994 (2017) ("The IEP is the means by which special education and related services are tailored to the unique needs of a particular child." (internal quotation marks and citation omitted)). In Texas, the committee which develops the IEP is referred to as the Admission, Review, and Dismissal Committee (ARDC). 19 TEX. ADMIN. CODE § 89.1050.

A school district need not provide the best possible FAPE, "nor one that will maximize the child's educational potential." *Cypress-Fairbanks*, 118 F.3d at 247. Rather, the school district must implement an IEP "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 207 (1982). This "generally require[s] an IEP reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Endrew*, 137 S. Ct. at 996 (internal quotation marks and citation omitted). The IDEA also requires states to educate children with disabilities "to the maximum extent appropriate . . . with children who are not disabled," and to do so "in the least restrictive environment consistent with [the child's] needs." *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 128 (5th Cir.1993).

Plaintiffs argue the District violated the IDEA's substantive requirements by denying J.M.'s eligibility for special education and related services despite a qualifying disability and demonstrated need. Pls.' Mot. J. Admin R. [#22] at 20–22. The District contends J.M. is not eligible because J.M. is already adequately accessing his education and does not "need" special education or related services under 34 C.F.R. § 300.8(a)(1). Def.'s Mot. J. Admin. R. [#21] at 11–12.

Neither party disputes J.M. has multiple disabilities in the form of ADHD, DCD, and SLD in the area of Written Expression (dysgraphia). *See id.* at 23. Therefore, the relevant question is whether J.M. has a need for special education and related services as a result of his qualifying disabilities.

(1)     **Need for Services**

In the IEP formulated on January 25, the District concluded J.M. needed special education and related services as a result of his disabilities. AR at 766; Jan. 25 IEP. As of

13

February 3, both the District and Plaintiffs agreed J.M. was eligible because he possessed a qualifying disability necessitating special education and related services. Jan. 25 IEP; AR at 656. On February 11, the District produced an FIE addendum which again confirmed J.M. needed special education and related services as a result of his disabilities. AR at 690–91.

Notwithstanding the parties' prior consensus that J.M. needs special education and related services, the District convened a District-only staff meeting with District attorney Denise Hays in order to "systemically address or review the process" by which the ARDC had determined J.M. was eligible for IDEA services. AR at 1288–90. The District then abruptly reversed course at the February 23 ARDC meeting, concluding J.M. did not need special education after all. AR at 1528; Pls.' Mot. J. Admin. R. [#22] at 26 (citing AR 763–66, February 23 Tape, 00:33:40–00:36:10).

The relevant question is whether the District got it right the second time, or whether—as the SEHO found—the testimony relied on by the District at the February 23 meeting and subsequent due process hearing was not credible because the teachers had been coached to a finding of no eligibility by District Staff. SEHO Decision at 20–21, 36–37. It is undisputed the District's February 23 decision to reverse course and deny eligibility was made without the benefit of any additional information or testing results. SEHO Decision at 20; Def.'s Mot. J. Admin. R. [#21] at 11. Because the SEHO ruled in favor of Plaintiffs in the due process hearing below, the District bears the burden of persuasion with respect to J.M.'s ineligibility. *See Seth B.*, 810 F.3d at 972 (finding appellant of SEHO decision bears burden of persuasion under IDEA).

The Court finds that the District's explanation for its reversal of eligibility is not credible and that sufficient evidence exists to support the District's January 23 decision to find J.M. eligible for special education and related services.

As a preliminary matter, the District suggests that if J.M. is achieving passing marks with his Section 504 accommodations and advancing from grade to grade, he cannot need special education. Resp. Pls.' Mot. J. Admin. R. [#27] at 6–7; Reply Def.'s Mot. J. Admin. R. [#32] at 10–11 & n.25.[9] While the District is correct in noting the IDEA does not require the District to maximize each student's potential, the Supreme Court has declined to equate grade advancement with the receipt of a FAPE. *See Endrew*, 137 S. Ct. at 1000 (declining to hold every child advancing from grade to grade is automatically receiving a FAPE); *see also* 34 C.F.R. § 300.101(c)(1) ("[E]ach state must ensure that FAPE is available to any individual child with a disability who needs special education and related services, even though the child has not failed . . . and is advancing from grade to grade.").

The Court declines to find J.M. does not need special education as a matter of law, simply because he has passed from grade to grade. J.M.'s grades and test scores indicate J.M. experienced mixed success in fourth grade. For its part, the District characterizes J.M. as an academic "rock star," and admittedly, J.M. earned all A's and B's in his fourth grade classes with the help of Section 504 accommodations. AR at 532; AR at 777–78. However, the District struggles to reconcile its characterization of J.M.'s academic performance with J.M.'s performance on benchmark tests midway through fourth grade. J.M. failed all three of these benchmark tests, badly. AR at 773. Though the District attempts to argue these benchmarks do not correlate with grade-level expectations, J.M.'s teachers characterized his scores as "shockingly low." Resp. Pls.' Mot. J. Admin. R. [#27] at 7.

The District also relies upon the testimony of J.M.'s teachers at the February 23 ARDC meeting to conclude J.M. does not need special education services. But in the proceedings below,

---

[9] The District does not argue it can avoid the requirements of the IDEA by providing special education services and then deeming them Section 504 accommodations. *See* Reply Def.'s Mot. J. Admin. R. [#32] at 11 (insisting J.M.'s Section 504 accommodations did not include special education services).

the SEHO found a "shocking difference" between the testimony given by J.M.'s teachers at the January 25 ARDC meeting versus the testimony given by the same teachers as the February 23 ARDC meeting. SEHO Decision at 36–37. On the basis of this divergent testimony, the SEHO concluded the testimony of District personnel at the February 23 ARDC meeting and at the due process hearing was not credible because District personnel had been "direct[ed] or 'train[ed]'" to find J.M. ineligible for special education. *Id.* at 21 ("The teachers' original determinations . . . made during the January ARDC meeting are more credible than the change in opinions provided at the February ARDC meeting.").

Though this Court's review of the SEHO decision is "virtually de novo," the Court must also afford "due weight" to the SEHO's factual findings. *Adam J.*, 328 F.3d at 808. This is especially true where, as here, the only evidence before the Court is the administrative record compiled in the hearing below. After reviewing the differences in opinion expressed at the two ARDC meetings and in light of the SEHO's credibility determinations, the Court concludes the testimony at the January 25 ARDC meeting is entitled to greater weight. The Court further concludes the testimony of J.M.'s teachers and of the District specialists at the January 25 ARDC meeting supports the District's initial conclusion that J.M. needs special education and related services. *See* Pls.' Mot. J. Admin. R. [#22] at 19–20 (citing AR 763–66, Jan. 25, 2016 Tape); *see also* SEHO Decision at 17–18 (cataloguing observations made by J.M.'s teachers at January 25 ARDC meeting); *see generally Endrew*, 137 S. C.t at 1002 (emphasizing IEP must be "reasonably calculated to enable the child to make progress appropriate in light of his circumstances").

Finally, the District argues J.M. cannot "need" special education because Plaintiffs have not specified what such special education would consist of. However, the Court notes the District

has already produced an IEP which purports to identify special education and related services needed by J.M. *See* Jan. 25 IEP. In claiming J.M. cannot need special education, the District in effect suggests it formulated and then confirmed an IEP which provided no special education in the first place. Yet the District has not argued the IEP is so infirm, nor has it challenged the services provided in its IEP—rather, the District has challenged J.M.'s eligibility for those services. Therefore, insofar as the District's January 25 IEP identifies special education and related services to be provided to J.M., the Court finds the District's argument has no merit.

More to the point, however, it is not the obligation of this Court to identify the services to be provided in the IEP. That is the job of the ARDC. This Court is restricted to considering whether J.M. qualifies as a child with a disability under the IDEA, *see* 34 C.F.R. § 300.8(a)(1), or whether the services J.M. currently receives are "reasonably calculated to enable the child to receive educational benefits" going forward. *Rowley*, 458 U.S. at 207. The Court concludes J.M. needs special education or related services within the meaning of § 300.8(a)(1). As a result of the District's denial of eligibility, J.M. has been denied a FAPE.

## Conclusion

The Court finds J.M. qualifies as a child with a disability under 34 C.F.R. § 300.8(a)(1) because he has qualifying disabilities which necessitate special education and related services. However, the Court does not reinstate the January 25 IEP because Plaintiffs have not demonstrated the District had an obligation to begin providing services prior to finalization and acceptance of the IEP.[10] *See supra* Section II.A.

---

[10] Though it appears the parties also dispute whether the January 25 IEP complies with the IDEA, neither party has briefed the Court regarding the sufficiency of the services provided therein. *See* Pls.' Mot. J. Admin. R. [#22] at 35 (explaining proposed IEP "did not meet all of the requirements of the IDEA" and requesting the Court allow the parties to "reconvene an ARDC and revising the existing IEP"). Absent a finalized and accepted IEP and in light of Plaintiffs' desire to continue revising the IEP with the ARDC, the Court does not reach the question of whether the services provided in the January 25 IEP are reasonably calculated to enable J.M. to receive educational benefits. *Rowley*, 458 U.S. at 207.

Accordingly,

IT IS ORDERED Defendant's Motion for Judgment on the Administrative Record [#21] is GRANTED IN PART and DENIED IN PART as described in this opinion; and

IT IS FURTHER ORDERED Plaintiffs' Motion for Judgment on the Administrative Record [#22] is GRANTED IN PART and DENIED IN PART as described in this opinion; and

IT IS FINALLY ORDERED Plaintiffs may renew their request for attorney's fees in accordance with this Court's local rules.

SIGNED this the 30 day of January 2018.

/s/ Sam Sparks
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE